UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SALA NAAMBWE and YVETTE NIMENYA,<br><br>Plaintiffs,<br><br>vs.<br><br>SMITHFIELD FOODS, INC.,<br><br>Defendant. | Case No.: 17-4123<br><br>**COMPLAINT** |

FILED SEP 0 7 2017 CLERK

COMES NOW Plaintiffs Sala Naambwe and Yvette Nimenya and bring this action for retaliation against the above-named Defendant as follows:

## THE PARTIES, JURISDICTION AND VENUE

1) This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

2) Plaintiff Sala Naambwe is an adult resident of Minnehaha County, South Dakota.

3) Plaintiff Yvette Nimenya is an adult resident of Minnehaha County, South Dakota.

4) Smithfield Foods, Inc. ("Smithfield") is a global meat-processing company that sells its products under various names such as John Morrell and Smithfield. It is subsidiary of WH Group of China and is headquartered in Virginia, but owns and operates a meat-processing plant in Sioux Falls, South Dakota.

5) At all times relevant to this Complaint, the Plaintiffs have been "employees" of Smithfield at its Sioux Falls plant within the meaning of 42 U.S.C. § 2000e(f).

6) Jurisdiction over this matter is pursuant to 28 U.S.C. § 1331 and § 1343(a)(3).

7) Venue over this matter is pursuant to 28 U.S.C.§ 1391(b)(1)-(2).

## FACTUAL ALLEGATIONS

8) Sala Naambwe ("Sala") is originally from the Democratic Republic of Congo and legally emigrated to the United States as a result of suffering shocking violence as a victim of genocide and civil war in her country of origin.

9) Yvette Nimenya ("Yvette") is originally from Rwanda and legally emigrated to the United States after suffering shocking violence as a victim of genocide and civil war in her country of origin.

10) In 2011, Yvette was hired by Smithfield to work in its Sioux Falls meat-processing plant on its pork processing line.

11) In 2013, Sala was hired by Smithfield to work in its Sioux Falls meat-processing plant on its pork processing line.

12) Both Sala and Yvette have performed their assigned duties in a manner that meets Smithfield's performance expectations.

13) In February 2016, while working with a co-worker ("Employee #30755") on a production line, the co-worker became openly aggressive and physically threatening toward Sala and Yvette, saying, "Bitch, open the f***ing sock like this," "fuck like this" and then hollered, "If you can't do a f***ing good job, you must go back to your f***ing country where you came from, Africa!" When Sala and Yvette responded to his outburst by expressing in their native language that they were frightened and wanted to pray, Employee #30755 hollered at them to "shut the f*** up in your language and speak f***ing English." When Sala responded, "This is a free country and people are allowed to speak their own language," Employee #30755 proceeded to push meat dangerously fast at Sala, causing her to be struck with a piece of meat that fell off the line onto her feet. He then announced to the

2

other workers in the room that he was "doing this for these monkeys" in reference to Sala and Yvette.

14) The next day, Sala and Yvette promptly reported the incident to their direct supervisor pursuant to Smithfield company policy. He told them that they needed to report the incident to Human Resources on the following Monday.

15) The following Monday, Sala, Yvette and one other co-worker who was offended and frightened by Employee #30755's offensive comments and threatening behavior informed their supervisor that they intended to report it to the Smithfield Human Resources staff.

16) Sala, Yvette and their co-worker went to report the incident to a Smithfield Human Resources representative on an assigned break time.

17) While they were making their report, their supervisor came in, and he and the Human Resources representative yelled at and berated the three women for being in the Human Resources department. The Human Resources representative then issued a warning to Sala, Yvette and their co-worker for being in the Human Resources department instead of working. She did not address their report and said "Go back to work. Who told you to come over here?"

18) By the time Sala and Yvette returned to work from the Human Resources office, Employee #30755 laughed at them, taunted them as he expressed that he knew that they had been disciplined for reporting him for his discriminatory treatment.

19) Plaintiffs' Smithfield manager and Human Resources representative knew or should have known htat both Plaintiffs have survived extreme physical, emotional and verbal

3

abuse and that they have a need to work in the safe, non-discriminatory environment that Smithfield represents it provides to its employees via its written policies.

20) Smithfield's disciplinary action against the Plaintiffs negatively impacted the Plaintiff's pay and ability to receives pay raises and promotions in the future.

21) Plaintiffs believe that they were disciplined and yelled at in an attempt to discourage them from reporting the other discriminatory acts and policy violations that they have observed in the Smithfield workplace because Smithfield's management in the Sioux Falls plant does not want to have to enforce its written policies.

22) To the best of Plaintiffs' knowledge, Employee #30755 was not disciplined for his discriminatory, harassing and threating behavior toward the Plaintiffs.

23) Following Sala's and Yvette's attempt to report discriminatory and physically threatening behavior to Smithfield's Human Resources department, Sala and Yvette was subjected to repeated acts of reprisal, including, but not limited, to the following:

> i) Sala and Yvette are subject to harsher work rules than similarly situated employees who did not engage in protected activity;
>
> ii) Sala and Yvette were reassigned to work in close quarters with a male co-worker who Smithfield had previously moved from their shift because he was sexually harassing them;
>
> iii) Sala has been repeatedly subject to written reprimands for actions that similarly situated employees who have not engaged in protected activities are not disciplined for;
>
> iv) Sala has been assigned to perform tasks that normally require 2 employees to safely perform; and
>
> v) Sala and Yvette are ostracized by the co-workers they work with because of their protected activity, which creates a physically dangerous situation when co-workers refuse to communicate with them.

24) To the best of Plaintiffs' knowledge, Smithfield managers are trying to make their work environment so hostile, dangerous and stressful that they will voluntarily leave employment.

## CAUSES OF ACTION

### COUNT 1:   REPRISAL IN VIOLATION OF TITLE VII

25) Plaintiff re-alleges the facts asserted in paragraphs 1-24 of this Complaint.

26) As described above, Plaintiffs were disciplined, subjected to different work conditions and effectively demoted in violation of Title VII, and Smithfield has continued to subject them to retaliation by a hostile work environment because of their protected activities.

27) Plaintiffs were compensated differently than similarly situated employees who are not of the same national origin or race as the Plaintiffs.

28) As a direct and proximate result of Smithfield's unlawful conduct, the Plaintiffs have suffered past and future lost income, mental anguish, physical harm, distress, embarrassment, loss of reputation and other damages in excess of $75,000.

29) Plaintiffs are entitled to attorney fees and costs in relation to asserting their statutory rights.

30) Plaintiffs are entitled to an award of punitive damages as allowed by law because of the Defendant's reckless disregard and/or deliberate indifference to their rights and safety.

### COUNT 2:   RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

31) Plaintiffs re-allege the facts asserted in paragraphs 1-29 of this Complaint.

32) Smithfield's conduct described herein violates 42 U.S.C. § 2000e-2.

33) As a direct and proximate result of Smithfield's tolerance and ratification of discriminatory animus based upon race and national origin, the Plaintiffs have suffered past and future employment income, mental anguish, physical harm, distress, embarrassment, loss of reputation and other damages in excess of $75,000.

34) Plaintiffs are entitled to attorney fees and costs in relation to asserting their statutory rights.

35) Plaintiffs are entitled to an award of punitive damages as allowed by law because of Defendant's reckless disregard and/or deliberate indifference to their rights and safety.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs requests the following judgment against the Defendants as follows:

1) That the discriminatory and retaliatory employment practices complained of in this Complaint be determined to violate the rights secured to the Plaintiffs under Title VII;

2) For all relief available to the Plaintiffs, including compensatory damages consisting of losses for suffered past and future employment income, mental anguish, physical harm, distress, embarrassment, loss of reputation and other damages in excess of $75,000;

3) For punitive damages in an amount this Court considers to be just, reasonable and fair;

4) For attorney fees and reasonable costs and disbursements pursuant to Title VII; and

5) For such other just and further relief as the Court deems fair and equitable under the circumstances.

Dated this 6th day of September, 2017.

6

JOHNSON POCHOP & BARTLING

_(signature)_

Stephanie E. Pochop
405 Main Street
P.O. Box 149
Gregory, SD 57533
605/835-8391
Stephanie@Rosebudlaw.com
*Attorney for Plaintiffs Sala Nimaabwe and Yvette Nimenya*

7