UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DISTRICT

| | |
|---|---|
| SALA NAAMBWE and YVETTE NIMENYA<br><br>Plaintiffs,<br><br>vs.<br><br>SMITHFIELD FOODS, INC.<br><br>Defendant. | Case No.: 4:17-cv-04123-LLP<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE "ME TOO" EVIDENCE** |

**PRELIMINARY STATEMENT**

Defendant Smithfield Packaged Meats Corp. (incorrectly named in this action as Smithfield Foods, Inc.) ("Smithfield") respectfully submits this Memorandum of Law in support of its motion *in limine* to exclude the introduction of prejudicial and irrelevant evidence at trial pertaining to the experience of other employees, unrelated to the Plaintiffs, with alleged racism, harassment or incident reporting at Smithfield. The Court should exclude evidence that involves nonparties and supervisors not implicated in Plaintiffs' Complaint because such evidence is irrelevant to Plaintiffs' claims and its prejudicial effect would greatly outweigh its probative value.

**STATEMENT OF FACTS**

This Court is familiar with the facts and circumstances of this case; therefore, only those relevant facts to the issues set forth herein are briefly summarized below.

Plaintiffs' Complaint alleges hostile environment harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiffs' claims relate to a single incident of race and national origin harassment by co-worker Scott Genzler, which never recurred after Plaintiffs reported the prohibited behavior. Both plaintiffs allege retaliation

1

occurred after they reported the Genzler incident in the form of a work assignment they found to be difficult (taking ribs from a bucket and putting them on a table).  Otherwise, it is only Naambwe who alleges retaliation, in connection with several clashes with her supervisors and other workers.  Plaintiffs do not allege claims on behalf of any other employees.  Still, Plaintiffs sought to use evidence regarding four other employees in their summary judgment brief and presumably may attempt the same at trial.[1]

**<u>Lorena Morales</u>**

Plaintiffs deposed Smithfield employee Lorena Morales.  Plaintiffs' counsel asked Ms. Morales general questions about whether co-workers made "racial comments" to her.  *See, e.g.,* Morales Dep., 9:21-13:4; 18:20-21:4.  Ms. Morales stated that she had never been "subject to racial comments" in the workplace.  Morales Dep. at 10:21-23.  Ms. Morales testified that she "heard things" said about other Hispanic workers, but could only recall one employee making such comments and could not provide specific examples, specify when the comment was made or report at whom it was directed.  Morales Dep. at 10:19-11:19; 12:19-13:2.  Ms. Morales never testified that she heard Mr. Genzler make any racial comments other than the incident that precipitated this suit or that she suffered any retaliation for her involvement in Plaintiffs' complaints.

In general, Ms. Morales said she attempted to handle any conflicts with co-workers personally and face-to-face without going to human resources because she preferred that approach.  *See, e.g.*, Morales Dep. 14:11-24; 21:23-22:7.  Although Morales received annual training given by Smithfield about how to report harassment, she chose not to do so with respect to these stray remarks she overheard.  *Id.*  Therefore, Smithfield was not able to investigate them.

---

[1] Smithfield requests the exclusion of irrelevant and prejudicial "me too" evidence from all of Plaintiffs' witnesses, but includes these four examples to demonstrate the issue and because Plaintiffs referenced them in their opposition to summary judgment.

Ms. Morales reported Mr. Genzler's conduct along with Plaintiffs, and she testified Mr. Genzler apologized and the conduct never recurred. Morales Dep. 27:3-28:15; 30:7-23.

### Thomas Anderson

Thomas Anderson works as a pickle maker in a different department than the Plaintiffs. Anderson Dep. at 4:9-20. He also serves as a union steward. *Id*. When asked non-leading questions, Mr. Anderson testified he never experienced discrimination in the workplace and never witnessed other employees being "subject to discriminatory treatment." Anderson Dep. at 5:25-6:6. Afterwards, in response to leading questions, he testified about some disciplinary actions he received and opined they were retaliatory. The disciplinary actions in question related to Mr. Anderson's explosive behavior in the workplace, including yelling at another union official and telling him to "do his damn job", and threatening the family and personal safety of a supervisor, Ernest Terry. Mr. Anderson admitted to some of this conduct. Anderson Dep. at 8:8-11; 10:15-11:11; 18:8-25.

Mr. Anderson did not witness the incident between Plaintiffs and Mr. Genzler, but offered a personal opinion that Mr. Genzler received lenient punishment. However, he admitted that he "did not know" if Mr. Genzler was written up, did not sit in on the meeting between Mr. Genzler and BJ Motley, and "never saw" Genzler's write-up. Anderson Dep. at 16:9-17:23. He also admitted he was unfamiliar with "the range of discipline that employees normally get for policy violations." Anderson Dep. at 8:8-9:1; 23:9-14.

### Lisa Christion

Lisa Christion works as a lead person in Department 19 with Plaintiffs. Christion Dep. at 5:19-6:1. Ms. Christion stated that she knew how to make a complaint of harassment based on training she received from Smithfield, but chose not to do so. Christon Dep. at 8:5-23.

3

Plaintiffs' counsel then asked Ms. Christion about her own alleged experience with sexual harassment by Thomas Anderson that began in the 1990s and ended roughly six years ago, well outside the time period at issue in Plaintiffs' complaint. Christion Dep at 18:1-21:14. Ms. Christion said she never contemporaneously reported the harassment to Smithfield. *Id*. at 21:9-14. All of the alleged harassment occurred outside the time period at issue in Plaintiffs' complaint and involved alleged sexual harassment, not racial or national origin harassment or retaliation, and involved only Mr. Anderson, who did not work in Plaintiffs' department. Christion Dep. at 20:9-19.

### BJ Motley

BJ Motley is a former Smithfield employee and current president of United Food and Commercial Workers Local 304. Motley Dep. at 7:2-8:16. Mr. Motley no longer works for Smithfield or on Smithfield's property and instead works in a union building about two miles away. Motley Dep. at 8:7-16. Mr. Motley has no first-hand knowledge of incidents that occur at Smithfield because he does not work on-site and relies on business agents to "give [him] information." Motley Dep. at 38:5-13.

Mr. Motley testified about his own experience with alleged discrimination at Smithfield, but stated it occurred "during my early years" at Smithfield, which would have been the 1990s, and he did not report it to human resources. Motley Dep. at 20:10-23; 80:10-23 (emphasizing that it was "[his] choice" not to report the alleged misconduct and admitting Smithfield could not do anything about it if not reported). Mr. Motley also alleged that he was told by employees that some Smithfield managers retaliated against employees for reporting alleged misconduct, but he could not provide any specific examples of retaliatory behavior. Motley Dep. at 26:10-33:2; 109:18-110:21 (e.g. Motley Dep. 31:6-8 "I just get complaints from the people where they say

that stuff happens, but I can't be specific, you know, exactly what."). Most of these supervisors have no relation to the litigation whatsoever. *Id*. (discussing, for example, Dennis Hamm, Charles Tomlin, Matt Frieberg, and Kristen Cress). Mr. Motley said he did not have any recent personal experience with retaliation for opposing race discrimination at Smithfield. Motley Dep. at 28:6-21; 108:6-109:11.

## ARGUMENT

### I. Plaintiffs' Cannot Introduce "Me Too" or "Other Acts" Evidence Unless it is Closely Related to Their Allegations.

The Federal Rules of Evidence preclude the admission of irrelevant or unduly prejudicial evidence. Fed. R. Evid. 401, 403. In discrimination cases, the admissibility of evidence of conduct experienced by employees other than the plaintiffs depends on many factors, "including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008). The Rules "do not make such evidence *per se* admissible or *per se* inadmissible," but instead required a "fact-intensive, context-specific inquiry." *Id*. Here, in their opposition to summary judgment, Plaintiffs referenced experiences of other employees, unrelated to the issues of this litigation, to attempt to support their claims. *See* Pls.' Opp., 16, 21, 24-25. Such evidence and any like evidence should be excluded at trial because it is not relevant to Plaintiffs' claims and would unduly prejudice the jury against Smithfield.

Although "me too" evidence is admissible when evidence of a policy or practice can assist in evaluating pretext, *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 424 (8th Cir. 2017), such evidence "must assist in the development of a reasonable inference of discrimination within the context of each case's respective facts." *Bradford v. Norfolk S. Corp.,* 54 F.3d 1412, 1419 (8th Cir. 1995). In this case, there is no policy challenge at issue and Plaintiffs do not challenge

particular practices; instead, Plaintiffs point to discrete work incidents they argue were retaliatory. Rule 403 "requires an on-the-spot balancing of probative value and prejudice" to ensure fairness. *Bennett v. Nucor Corp.*, 656 F.3d 802, 811 (8th Cir. 2011) (quoting *Mendelsohn*). To determine whether evidence of alleged discrimination against nonparties is relevant, the Court should consider several factors including "whether it's the same place, the same time, the same decision makers" and whether the evidence would put the decision makers on notice of potential discrimination issues. *Id.* at 810. One important aspect of this "on-the-spot" balancing involves the reliability of the testimony and whether it involves hearsay. *Id*. (refusing to admit evidence of previous harassment complaints to the extent offered for the truth of the matter). And, of course, the Court must consider the materiality of the evidence to the Plaintiffs' specific claims and whether the testimony offered makes the existence of any material fact more or less probable. Fed. R. Evid. 401.

As further explained below, the Court should exclude the "me too" evidence discussed above because it fails to meet the *Mendelsohn* standard for close relation to the Plaintiffs' claims, involves circumstances irrelevant to the material facts needed to establish Plaintiffs' case and lacks reliability because it relies on hearsay and baseless lay opinion.

      i.      Testimony Regarding of Other Types of Misconduct Allegedly Committed by Unrelated Supervisors or Employees Should Not Be Admitted.

Ms. Christion's testimony implicates sexual harassment by an unrelated employee from many years ago. Christion Dep. at 18:1-21:12. Ms. Morales cites some nonspecific stray remarks about Hispanic workers, made at unspecified times. Morales Dep. at 12:19-24. Here, Plaintiffs did not bring a claim of sexual harassment or harassment based on Mexican heritage or Hispanic descent. Where plaintiffs attempt to use evidence of one form of discrimination to show the likelihood that other discrimination occurred, courts may exclude such evidence

because it is not relevant. *Olivares v. Brentwood Indus.*, 2015 WL 631337, at *1 (W.D. Ark. Feb. 13, 2015) (finding evidence of gender discrimination irrelevant to a race discrimination case). Ms. Christion and Ms. Morales also do not allege the same actors or conduct was involved in their experiences, so they do not satisfy Mendelsohn's requirement of close relation. *See E.E.O.C. v. CRST Van Expedited*, Inc., 2013 WL 321021, at *8 (N.D. Iowa Jan. 28, 2013) (*citing Bennett*, 656 F.3d at 810) (excluding testimony by a coworker about unrelated harassment because it "bears no relevance" to plaintiffs claim of harassment by a different coworker in a different manner).

Importantly, neither Ms. Morales nor Ms. Christion reported the alleged harassment to Smithfield, so their experiences also lack relevance to Plaintiffs' retaliation claim.[2] Without the ability to speak to how Smithfield dealt with these alleged instances of misconduct, because they never put Smithfield on notice of it, the underlying details of their allegations lack relevance. *See cf. Goold v. Hilton Worldwide*, 2014 WL 4629083, at *8 (E.D. Cal. Sept. 15, 2014) (excluding details regarding a past sexual harassment complaint by another employee to support plaintiff's retaliation claim, but allowing testimony regarding the fact that the complaint was made and company's response to the complaint). Here, since neither employee made a complaint or notified Smithfield of their concerns regarding these other instances of alleged misconduct, there is no basis to allow the evidence even for the limited purpose of examining Smithfield's responses.

Evidence of Ms. Christion's experience with alleged sexual harassment or Ms. Morales's with general comments regarding Hispanic employees also would potentially open the door to collateral issues "that only would prolong the trial and that might confuse the jury." *See Easley*

---

[2] Ms. Morales did report to human resources the incident involving Mr. Genzler and Plaintiffs, and Smithfield took action and addressed the report.

7

*v. Am. Greetings Corp.,* 158 F.3d 974, 976 (8th Cir. 1998).  It also would create the potential for unfair prejudice because the jury could seek to punish Smithfield for conduct completely unrelated to Plaintiffs' claims.  *See CRST Van Expedited, Inc.*, 2013 WL 321021 at *9 (finding that, even assuming testimony about unrelated coworker harassment had some relevance, the danger of unfair prejudice substantially outweighed the probative value because "the jury might hold [defendant] responsible for [the co-worker's] sexual harassment claim that is not in issue in the instant action").  If Ms. Christion or Ms. Morales is permitted to testify about the unrelated harassment they allegedly experienced or witnessed, it would inevitably lead to mini-trials on the merits of their allegations that would unduly delay the trial.  *Id.*  Ms. Morales's testimony is further weakened because it is vague and involves an imprecise timeframe and did not involve any decisions regarding Plaintiffs.  *See Jones v. Arkansas Game & Fish Comm'n*, 237 F. App'x 119, 122 (8th Cir. 2007) (affirming exclusion of evidence of "racially discriminatory statement" because the evidence "concerned vague, isolated incidents that occurred over an imprecise time frame" and did not involve any decision made regarding plaintiff or by plaintiff's supervisors).

Further, such evidence should not be admitted because the circumstances of the sexual harassment alleged by Ms. Christion and the stray remarks alleged by Ms. Morales were not similar to the alleged harassment of Plaintiffs, which involved a targeted, one-time confrontation with a co-worker.  *Burleson v. Sprint Pcs Grp.*, 123 F. App'x 957, 960 (10th Cir. 2005) (affirming exclusive of evidence where plaintiff failed to show experiences of other employees were "similar to hers or otherwise tied to hers").  The same logic applies to the testimony of Mr. Motley regarding the harassment he allegedly experienced "during [his] early years" at Smithfield in the 1990s.  The experience is too far removed in time, did not involve any of the

same supervisors; and, Mr. Motley, like Ms. Christion and Ms. Morales, elected not to report the incident.  *See* Motley Dep. at 80:10-23.

        ii.        Vague Hearsay Evidence Regarding Alleged
<u>Retaliation by Unrelated Supervisors Should Not Be Admitted.</u>

Plaintiffs also seek to use Mr. Motley's testimony to show Smithfield supervisors have retaliatory tendencies.  Pls. Opp. at 21.  But Mr. Motley's testimony is unreliable and unduly prejudicial for numerous reasons, most notably because it is riddled with hearsay, it involves unrelated supervisors, and he failed to provide any specific examples of retaliation within the last five years.  *See, e.g.,* Motley Dep. 31:6-8; 109:18-111:18 ("I just get complaints from the people where they say that stuff happens, but I can't be specific, you know, exactly what.").  Testimony regarding unsubstantiated, non-specific alleged retaliation by unrelated supervisors against unrelated employees at unknown points in time lacks relevance, carries a risk of confusing the jury, and opens the door to collateral issues.  Fed. R. Evid. 401, 403; *see also E.E.O.C. v. UMB Bank Fin. Corp.*, 558 F.3d 784, 794 (8th Cir. 2009) (affirming district court's exclusion of evidence in an ADA case about an unrelated disability discrimination claim because "the evidence consists of little more than allegations with limited probative value" and because it would have involved collateral issues and equate to "try[ing] another lawsuit"); *Olivares*, 2015 WL 631337 at *2 (finding "if proffered evidence [of alleged discrimination against other employees] is little more than vague allegations, the Court may find its exclusion necessary").

By Motley's own admission his testimony is hearsay.  He does not work at Smithfield and relies fully on the statements of Smithfield employees to reach his conclusions that certain supervisors engage in retaliation.  Motley Dep. 31:6-8; Fed. R. Evid. 801.  If Mr. Motley's testimony is allowed, it carries the risk of significantly prejudicing the jurors against Smithfield because his word may be given credence despite its being based on hearsay, totally unreliable,

9

and irrelevant to the Plaintiffs' personal experiences.  Motley Dep. at 109:18-111:18.  Accordingly, *Mendelsohn* requires exclusion of Mr. Motley's testimony because it does not bear a close relation to Plaintiffs' particular circumstances and Rule 403 requires its exclusion because the likely prejudicial effect of the testimony substantially outweighs its probative value.  Fed. R. Evid. 401, 403; *Mendelsohn*, 552 U.S. 379 (2008).

> iii. Baseless Opinions of Employees who Did Not Report Harassment to Smithfield are Irrelevant and Prejudicial.

In their opposition brief, Plaintiffs also attempt to use testimony from Ms. Morales and Ms. Christion to show Smithfield did not follow its harassment reporting protocols and discouraged incident reporting.  Pls.' Opp. at 24.  The testimony of these employees regarding their personal decisions not to report harassment involves significantly different facts, unrelated to Plaintiffs' conduct, expresses personal preferences to avoid conflict and is not probative of the issue Plaintiffs attempt to use it for: to show they suffered retaliation for reporting Mr. Genzler's conduct or that Smithfield did not enforce its policy not to retaliate against employees for reporting harassment.  *Id.*

Neither employee ever reported alleged misconduct to Smithfield human resources.  Ms. Morales, for example, testified that she elected not to report comments about Mexican heritage to Smithfield even though she knew she could.  Morales Dep. at 10:21-23; 12:19-16:18.  Ms. Morales's situation bears no resemblance to Plaintiffs – they were subject to personal harassment by Mr. Genzler and reported it, while Ms. Morales allegedly heard stray remarks about others by unidentified employees and did not report them.  *Id.*  And, in fact, Ms. Morales reported the incident involving Mr. Genzler along with Plaintiffs, and Smithfield responded to their complaints.

Therefore, while Ms. Morales has knowledge about how Smithfield responded to the Genzler incident, she lacks personal knowledge of how Smithfield responded to other complaints of discriminatory conduct because she never engaged in its process.  *See Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758 (8th Cir. 2015) (finding lay opinion testimony admissible only if the witness has personal knowledge or perceptions based on industry experience).  Her opinions about how she *thinks* Smithfield *might have* responded *if* she reported her allegations about Hispanic comments are irrelevant to Plaintiffs' claims, and Plaintiffs should not be allowed to draw any comparison between the unreported incident and the Genzler incident because it creates an unfair inference that Smithfield does not respond to complaints.  In fact, Smithfield was never allowed the opportunity to respond to the stray Hispanic remarks and therefore, if admitted into evidence, their likely prejudicial effect on the jury would greatly outweigh their probative value.  Fed. R. Evid. 401, 403.

Ms. Christion's testimony regarding her decision not to report alleged sexual harassment similarly fails to present probative evidence related to the Plaintiffs' allegations.  She spoke regarding unrelated sexual harassment that occurred many years ago and stated she elected not to report it.  Christion Dep. at 18:1-20:23.  Again, Ms. Christion's experience does not make it more or less likely that Plaintiffs' suffered retaliation because her testimony involves alleged conduct outside the relevant time period of Plaintiffs' complaints, the alleged conduct involves a different alleged bad actor, and she did not report the conduct to Smithfield.  As such, the comments are not relevant to Plaintiffs' "theory of the case" that Smithfield retaliated against them because of their complaints about Mr. Genzler.  *Bennett v. Nucor Corp.*, 656 F.3d 802, 810 (8th Cir. 2011) (noting *Mendelsohn* required courts to consider "plaintiff's circumstances and theory of the case" in deciding questions of admissibility related to "Me Too" evidence).

Mr. Anderson's testimony regarding his personal belief that Mr. Genzler received unduly lenient punishment should be excluded for similar reasons. Mr. Anderson admitted he lacked personal knowledge of the discipline Mr. Genzler received and did not know Smithfield's standards for issuing different levels of discipline. Anderson Dep. at 16:9-17:23; 23:9-14. Mr. Anderson's lack of personal knowledge regarding Mr. Genzler's discipline and his lack of relevant industry experience regarding Smithfield's standards for issuing discipline render his testimony about the sufficiency of the punishment irrelevant and substantially more prejudicial than probative. Fed. R. Evid. 401, 403.

> iv. Evidence Regarding Mr. Anderson's Perception of his Treatment After Supporting Plaintiffs' is Irrelevant and Collateral.

To the extent Plaintiffs attempt to show Mr. Anderson received unfair treatment based on his support for them, such evidence should be excluded as irrelevant. Fed. R. Evid. 401. Any attempt to prove discrimination against Mr. Anderson would devolve into a mini-trial about Mr. Anderson's admitted misconduct and the merits of the disciplinary actions taken against him. *See, e.g.,* Anderson Dep. at 8:8-11; 10:15-11:11; 18:8-25. No foundation exists for Mr. Anderson's claim that he suffered retaliation. Instead, the record shows he received discipline because of his own explosive conduct. His claim is speculative and unrelated to the allegations in the Complaint.

To rebut the inference of discrimination Plaintiffs are attempting to create, Smithfield would have to put on evidence about the conduct that led to Anderson's disciplinary actions, including testimony of witnesses to each incident, testimony from Anderson's supervisors and testimony from human resources about the bases for Anderson's discipline. Such an exercise would unduly prolong the trial without shedding any light on whether Smithfield human resources or Plaintiffs' supervisors discriminated against Plaintiffs. *See UMB Bank Fin. Corp.*,

12

558 F.3d at 794 (affirming district court exclusion of collateral discrimination allegations where court concluded "[w]e are not going to try another lawsuit. We have enough to manage."). Further, a mini-trial regarding Mr. Anderson would greatly confuse the jurors, who would be asked to equate Mr. Anderson's treatment with that of the Plaintiffs. Fed. R. Evid. 403. There is no evidence in the record that ties Mr. Anderson's disciplinary history to retaliation against the Plaintiffs, and the Court should not allow Plaintiffs to speculate on that matter to sow confusion with the jury and unfairly prejudice Smithfield. Mr. Anderson's misconduct, and the discipline he received as a result, is not probative of any action taken with regard to Plaintiffs.

      v.      Plaintiffs Should Not Be Able to Bring Other "Me Too" Evidence Without a Prior Showing of Relevance.

The present motion attempts to predict, based on Plaintiffs' opposition to summary judgment, the "me too" evidence they might bring at trial. To the extent Plaintiffs seek to introduce "me too" evidence not addressed herein, Plaintiffs request the Court require Plaintiffs' counsel to approach and explain why the evidence is relevant to Plaintiffs' claims and satisfies the standard of Rule 403. *Olivares,* 2015 WL 631337, at *3 (W.D. Ark. Feb. 13, 2015) (denying without prejudice motion in limine for "blanket exclusion" of "me too" evidence, but requiring plaintiffs to make an offer of proof of admissibility prior to presenting evidence related to "other race discrimination practices" involving the defendant).

## CONCLUSION

For the foregoing reasons, Smithfield respectfully requests the Court grant its motion *in limine* and enter an order to prohibit Plaintiffs from introducing the "me too" evidence discussed above. Smithfield further requests the Court require Plaintiffs to make an offer of proof of admissibility before they attempt to submit other "me too" evidence regarding the experience of

other employees with Smithfield's internal reporting policies or their experiences with harassment or discrimination.

Date: September 10, 2018                         Respectfully submitted,

                                                          **SMITHFIELD PACKAGED MEATS CORP.**

/s/ Lisa K. Marso
Lisa K. Marso
BOYCE LAW FIRM, L.L.P.
300 S. Main Avenue
Post Office Box 5015
Sioux Falls, SD 57117-5015
605.336.2424 – PHONE
605.334.0681 – FAX
LKMARSO@BOYCELAW.COM

Susan F. Wiltsie (*Admitted Pro Hac Vice*)
Andrea R. Calem  (*Admitted Pro Hac Vice*)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
202.955.1500 – PHONE
202.778.2201 – FAX
SWILTSIE@HUNTON.COM
ACALEM@HUNTON.COM

*ATTORNEYS FOR DEFENDANT*
*SMITHFIELD PACKAGED MEATS CORP.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served via the Court's electronic filing system on September 10, 2018 on the following counsel for Plaintiffs:

>Stephanie E. Pochop, Esq.
>Johnson Pochop & Bartling
>405 Main Street
>Post Office Box 149
>Gregory, South Dakota 57333
>stephanie@rosebudlaw.com

>/s/ Lisa K. Marso
>Lisa K. Marso